

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

### NO. PD–0931–16

---

**ANDREAS MARCOPOULOS, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIRST COURT OF APPEALS HARRIS COUNTY

---

**KEEL, J., filed a dissenting opinion in which KELLER, P.J., joined.**

### <u>DISSENTING OPINION</u>

We should either dismiss this petition as improvidently granted or uphold the finding of probable cause to search Appellant's truck. Since the majority does neither, I respectfully dissent.

### <u>Dismiss as Improvidently Granted</u>

A trial court's ruling on a motion to suppress must be upheld on appeal if any applicable legal theory supports it. *State v. Copeland*, 501 S.W.3d 610, 612-13 (Tex.

Crim. App. 2016).

Police officers may search persons whom they lawfully arrest. *United States v. Robinson*, 414 U.S. 218, 236 (1973).

Appellant has never challenged the lawfulness of his arrest for traffic offenses. After that arrest, police found cocaine in his truck and on his person. The cocaine found on his person was admissible because it was found in a search incident to his arrest. *See Robinson*, 414 U.S. at 236. The trial court's ruling was correct on that theory and must be upheld on appeal. *See Copeland*, 501 S.W.3d at 612-13. Since Appellant was indicted for and pled guilty to possession of less than a gram of cocaine, the cocaine on his person supported his prosecution regardless of the cocaine found in his truck, and we need not address the legitimacy of the search of his truck.

We should dismiss the petition for discretionary review as improvidently granted.

<u>Probable Cause to Search the Truck</u>

Police may search a vehicle if they have probable cause to believe it contains evidence of a crime. *United States v. Ross*, 456 U.S. 798, 825 (1982). In such a case "a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *Id*. at 809. Due to the lower expectation of privacy attendant to automobiles, however, the warrant requirements for searching them are less rigorous than those for other types of searches. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007), quoting *South Dakota v. Opperman*, 428 U.S.

364, 367 (1976).

Probable cause exists when "the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime." *Brown v. State*, 481 S.W.2d 106, 110 (Tex. Crim. App. 1972). "Probable cause requires an evaluation of probabilities, and probabilities 'are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Wiede*, 214 S.W.3d at 24, quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949). If the totality of the circumstances demonstrates a "fair probability" of finding evidence at the location being searched, then the probable cause standard is met. *Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006).

Appellate courts must review a trial court's probable cause finding in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

Viewed in the light most favorable to the trial court's ruling, the evidence here showed that undercover narcotics officer Joseph Oliver had been making cases out of Diddy's Sports Bar throughout his six-year tenure in the narcotics division. Diddy's was "set up like a sports bar but they don't sell anything other than narcotics out of there." Two weeks before Appellant's arrest, Oliver had made an undercover buy at Diddy's after which his team had executed a search warrant.

On the day of Appellant's arrest, they were "continuing the investigation by knocking cases out, proving that they were still" selling drugs, trying "to pick off customers who'd just in and buy." The prevalence of drug deals at Diddy's was corroborated by the defense witness, an attorney who testified that he had "had a case from Diddy's" and had "heard about these other cases in which the police stop somebody who has bought dope there and pulled them over and indeed found dope there."

That day, Oliver and his partner were watching Diddy's from a nearby parking lot. They saw appellant park in Diddy's lot, go into the bar for about three minutes and then return to his car and leave. His brief stay meant that he did not have time for a drink, and his actions conformed to a pattern of behavior exhibited by other Diddy's narcotics buyers. Oliver had seen Appellant at Diddy's before but had been unable to stop him on those prior occasions.[1]

After Oliver and his partner saw Appellant commit traffic offenses, they called for a marked patrol unit to stop him. The patrol officer, Tony Villa, pulled behind Appellant in such a way that, according to the defense witness, it was obvious whom he was after even without lights and sirens.

With Villa behind him, Appellant began making furtive gestures toward the center console and watching Villa in his rearview mirror. According to Oliver, Appellant

---

[1] "We'd seen him at the location before, we couldn't get him to stop quick enough and get him out of there due to traffic or we couldn't enter in there. At this time when we seen him come back which we did, it was another customer we've seen at the location before."

reached toward the passenger side of his truck as if "trying to hide something." After Villa activated his emergency equipment, Appellant pulled into a gas station. As Villa was approaching the truck on foot, Appellant was still moving his hands around toward the center console area.

The totality of these circumstances viewed in the light most favorable to the trial court's ruling – Appellant's brief, repeat visit to a location notorious for drug sales, his behavior there mirroring that of other drug buyers, plus his efforts to hide something when he realized the police were after him – indicated a "fair probability" of finding contraband in his car. But instead of evaluating the totality of the circumstances, the majority opinion picks them off one by one, viewing them in a light unfavorable to the trial court's ruling and holding each inadequate to support a finding of probable cause.

First the majority "severely" discounts "the probative value of Marcopoulos's presence at Diddy's" and cites *Sibron v. New York*, 392 U.S. 40 (1968), in support of that viewpoint. But the majority's reliance on *Sibron* is misplaced.

*Sibron* did not involve an automobile search, and automobile searches are subject to less rigorous warrant requirements because of a lower expectation of privacy in automobiles. *Opperman*, 428 U.S. at 367; *Wiede*, 214 S.W.3d at 24. That does not mean that the Fourth Amendment does not apply to automobiles; it does mean that equating the requirements for searching cars with the requirements for searching persons is a false equivalence.

Also, *Sibron* is distinguishable on its facts. The police officer who searched Sibron's pocket knew nothing about him; he merely saw him "talking to a number of known narcotics addicts over a period of eight hours." *Sibron*, 392 U.S. at 62. In this case, by contrast, Oliver recognized Appellant as a repeat visitor to a "bar" that was a front for narcotics sales and who exhibited behavior consistent with that of known drug buyers at that establishment. The majority dismisses that testimony because, in its view, "this hardly leads to the conclusion that . . . Oliver knew Marcopoulos to be a repeat narcotics customer." But these facts can fall short of establishing such a conclusion and still help establish probable cause. Instead of considering them as part of the bigger picture and looking at them in the light most favorable to the trial court's ruling, however, the majority discards them.

Having dispensed with any incriminating inferences to be drawn from Appellant's repeated visits to Diddy's, the majority acknowledges that his "unusually brief" visit there on the day of his arrest was suspicious but holds it insufficient to support a probable cause finding, again isolating a fact instead of viewing it as part of a totality of the circumstances. The majority then turns its attention to Appellant's furtive gestures and finds that they fall short, as well.

The majority claims that Appellant's furtive gestures lacked significance because they were not "in response to police action . . . but rather mere police presence" and cites *Brown,* 481 S.W.2d 106, as authority for this supposed distinction. But *Brown* did not

hold, as the majority seems to, that something like "wailing sirens or flashing lights" must precede furtive gestures to cast them in an incriminating light. Instead, *Brown* acknowledged the lack of evidence in that case to show that (1) the defendants recognized that the *unmarked* car following them was a police car, (2) their gestures were in response to that recognition, and (3) their ambiguous shoulder movements were made for the purpose of avoiding apprehension. *Id*. at 112. Here, by contrast, a *marked* patrol unit pulled in behind Appellant's truck, Appellant knew that the patrol car was behind him, and his gestures, far from ambiguous, looked as if he were hiding something. Deliberately furtive gestures at the approach of police "are strong indicia of mens rea," *Sibron*, 392 U.S. at 66, and the majority errs to discount them in this case.

Even if the law required police "action" for furtive gestures to have incriminating significance, the gestures here would meet that requirement because Appellant continued them after he pulled over in response to the patrol officer's activation of his emergency equipment, a fact ignored by the majority opinion.

The majority correctly states that furtive gestures alone do not establish probable cause. But having dismissed the other suspicious circumstances in this case – the nature of Diddy's as a front for drug sales, Appellant's repeated appearances there, his brief appearance on this occasion – the majority destined Appellant's furtive gestures to stand alone and thus be insufficient to support a finding of probable cause.

The majority cites *Turner v. State*, 550 S.W.2d 686 (Tex. Crim. App. 1977)

(commissioner opinion), as an example of probable cause based on furtive gestures of which it approves. In that case, a driver dropped a matchbox to the floor as he exited a vehicle in response to a police officer's command. *Id*. at 688. The *Turner* opinion held that sufficed as probable cause. *Id*. If dropping a matchbox in the presence of a police officer amounts to probable cause, then the totality of the circumstances here amounts to probable cause, too.

We should dismiss this petition as improvidently granted. Alternatively, we should uphold the trial court's implicit finding of probable cause to search the truck. Since the majority does neither, I dissent.


Filed: December 20, 2017

Publish